UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 23-cr-253 (JDB) |
| v. | : | |
| | : | |
| JASON CURL, | : | |
| | : | |
| **Defendant** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Jason Curl has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Curl to 30 days of incarceration on Count Three and 24 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.      Introduction**

Defendant Jason Curl, 48, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Curl pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). The government's recommendation is supported by Curl's (1) encouragement to other rioters to move "Forward!" and into the building; (2) his use of his fists to hit the walls and his flagpole to hit the ground while yelling and cheering inside the Capitol; (3) the 24 minutes he spent inside the Capitol and almost two hours Curl spent on Capitol Grounds; and (4) his lack of remorse.

The Court must also consider that Curl's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Curl's crimes support a sentence of 30 days of incarceration on Count Three and 24 months' probation on Count Four in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 25.

*Defendant Curl's Role in the January 6, 2021 Attack on the Capitol*

On or before January 6, 2021, Curl and his partner, Deborah Sandoval ("D. Sandoval"),[2] traveled to Washington D.C. from Melbourne, Iowa, and attended the former President's "Stop the Steal" rally by the Washington Monument. *See* ECF No. 25 at ¶ 8. Curl is depicted in a photo below with D. Sandoval near the Washington Monument on January 6, 2021. *See* Image 1.

---

[2] D. Sandoval and her son, Salvador Sandoval Jr. ("S. Sandoval"), were charged for their role in the attack on the Capitol on January 6, 2021. *United States v. Sandoval, et. al.,* 21-cr-195 (CKK), ECF Nos. 19 and 38.

S. Sandoval entered the Capitol at a different time and location, and he committed four assaults during his time inside the building. *Id.,* ECF No. 136. On December 15, 2022, after a bench trial, S. Sandoval was found guilty of all twelve counts of the superseding indictment and was sentenced to 88 months' incarceration. *Id.*, ECF Nos. 103 and 143.

On December 14, 2022, D. Sandoval pleaded guilty to violating 18 U.S.C. § 1752(a)(1) for her actions at the Capitol on January 6, 2021, and was sentenced to five months' incarceration. *Id.,* ECF Nos. 101 and 129.

On July 20, 2023, Curl was arrested for his actions at the Capitol on January 6, 2021. ECF No. 4. Currently, Curl and D. Sandoval are partners and living together. *See* Image 2.



*Image 1: Photo of Curl (circled in yellow) near the Washington Monument*

After the rally, at approximately 2:09 p.m., Curl and D. Sandoval entered the restricted grounds of the Capitol near the Peace Circle Monument and walked to the West Plaza of the Capitol. ECF No. 25 at ¶¶ 8 and 9. Between 2:09 p.m. and 2:49 p.m., Curl and D. Sandoval moved towards the Capitol, up to the Upper West Terrace, towards the Senate Wing Door. As Curl approached the Senate Wing Door, the smell of pepper spray or OC spray was in the air, windows of the Capitol had been shattered,[3] and the doors fire alarms[4] were ringing. The still frame of Exhibit 3 below depicts Curl on a walkway just feet from the Senate Wing Door hitting his flagpole against the ground as the mob chants, "Stop the Steal!"

---

[3] Government Exhibit 1 is an open-source video from outside the Senate Wing Door. The person taking the video remarks, "I smell OC, they've been tear gassed, it's even bothering me a little bit," as he pans to show multiple shattered windows. At the :09 time mark in the video, Curl can be seen just feet from the person taking the video.

[4] Government Exhibit 2 is an open-source video from inside the Capitol at the Senate Wing Door. Curl can be seen at the 5:06 time mark of the video while the fire alarm for the Senate Wing Door blares and the mob chants, "Fight for Trump!"



*Still frame of Exhibit 3 at :09: Curl (boxed in yellow)*

As depicted in the still frame of Exhibit 4 below, Curl moved towards the Senate Wing Door and shouted, "Forward!" to other rioters. *See id*. at ¶ 9.



*Still frame of Exhibit 4 at :02: Curl (circled in yellow)*

At 2:49 p.m., Curl and D. Sandoval entered the Capitol through the Senate Wing Door. The still frame from Exhibit 4 below shows Curl using his hand to repeatedly hit the wall as he entered the Senate Wing Door. *See Id*. at ¶ 10.

5



*Still frame of Exhibit 5 at :51: Curl (circled in yellow) and D. Sandoval (circled in red)*

Shortly after entering the Senate Wing Door, Curl and D. Sandoval moved towards the Crypt. During this time, D. Sandoval can be seen and heard on a video recovered from another rioter's cellphone yelling, "get her ass out here." The still frame from Exhibit 6 below shows Curl just behind his D. Sandoval when she yells to "get" Nancy Pelosi, the Speaker of the House, "out here."



*Still frame of Exhibit 6 at :23: Curl and D. Sandoval (circled in yellow)*

6

Curl continued to parade, yell, and encourage the mob after he entered. The still frame of Exhibit 5 below shows Curl raising his flagpole into the air just moments after he pounded his flagpole into the ground multiple times.



*Still frame of Exhibit 5 at 6:48: Curl (circled in yellow)*

During this time Curl and D. Sandoval were separated from each other and Curl continued down a hallway towards the Crypt. *See Id*. Between 2:56 p.m. and 3:05 p.m., Curl paraded through the Crypt, a hallway on the House-side of the Capitol, and then returned to the Senate Wing Door. *See Id*. At 3:13 p.m., Curl exited the Capitol through the Senate Wing Door. *See* Exhibit 5 at 12:41.

After exiting the Capitol, Curl did not leave Capitol Grounds. Curl and D. Sandoval traveled to the other side of the Capitol to meet S. Sandoval. Image 3 below is a photograph taken of Curl, D. Sandoval, and S. Sandoval on the at 3:45 p.m.

7



*Image 3: Curl (circled in yellow), D. Sandoval, and S. Sandoval*

Based on metadata from D. Sandoval's cellphone, Curl remained on Capitol Grounds until at least 4 p.m. on January 6, 2021.

*The Charges and Plea Agreement*

On July 27, 2023, the United States charged Curl by a four count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On December 1, 2023, pursuant to a plea agreement, Curl pleaded guilty to Counts Three and Four of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By plea agreement, Curl agreed to pay $500 in restitution to the Architect of the Capitol.

### III. Statutory Penalties

Curl now faces sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Curl faces up to six months of imprisonment and a fine of up to $5,000 on each charge. Curl must also pay restitution under the terms of his

8

plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days of incarceration on Count Three and 24 months' probation on Count Four.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Curl's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Curl, the absence of violent or destructive acts is not a mitigating factor. Had Curl engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Curl's case is his encouragement of the mob. Curl yelled, "Forward!" to other rioters and pounded his flagpole into the ground as he approached the Senate Wing Door, he hit the wall as he entered the Capitol, and he raised his flag once inside. Curl's words and actions contributed to the chaos that day.

Curl spent 24 minutes inside the Capitol as he traveled from the Senate Wing Door to the Crypt, down a hallway on the House-side of the Capitol, and then back to the Senate Wing Door. He walked towards where law makers should have been certifying the Electoral College votes while his partner and other rioters screamed threats against officers and chanted during what should have been the peaceful transfer of power. Before entering the Capitol building, Curl saw the broken windows in and around the Senate Wing Door, heard the blaring alarms, and smelled the pepper spray. At that point, he should have departed from the Capitol grounds. But he did not. Curl continued into the heart of the building.

Accordingly, the nature and the circumstances of this offense establish the need for a sentence of 30 days of incarceration on Count Three and 24 months' probation on Count Four.

### B. Curl's History and Characteristics

As set forth in the PSR, Curl's criminal history consists of a misdemeanor conviction for Dogs at Large. ECF 31 ¶ 20. Curl reported to the PSR writer that he has been employed since January 24, 2011, as a designer at Fisher Controls. *Id.* at ¶ 45. Curl has been compliant with his conditions of pre-trial release. *Id.* at ¶ 5. Curl's law-abiding life shows that he should have known his actions and the actions of his fellow rioters on January 6 were unlawful. On January 6, 2021, Curl disregarded what he knew and contributed to the chaos that day. He knew better and should be held accountable.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a

political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-cr-41 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a short term of incarceration. To this date, Curl has not apologized or expressed remorse for his actions on January 6, 2021. While Curl's actions were not violent, his encouragement and choice to continue onto Capitol Grounds, into the Senate Wing Door, and into

11

the heart of the Capitol are deserving of punishment. The Court must sentence Curl in a manner sufficient to deter him specifically, and others generally, from going down that road again.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[5] This Court must sentence Curl based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Curl has pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the riot on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present

---

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

Like Curl, other January 6 defendants encouraged their fellow rioters to commit crimes outside and inside of the Capitol. A defendant's encouragement of the mob emboldens other rioters to do and say things they otherwise would not.

In *United States. v. Sandoval, et. al.*, 21-cr-195 (CKK), D. Sandoval pleaded guilty to violating 18 U.S.C. § 1752(a)(1) and was sentenced to five months' incarceration for her role in the January 6 riot. ECF Nos. 102 and 130. Curl and D. Sandoval's cases are similar in what they did, but dissimilar in evidence of their intent.

Curl and D. Sandoval entered the Capitol at the same time and left the building at relatively the same time on January 6, 2021. Both traveled to the Crypt, were non-violent, and both pleaded guilty. However, D. Sandoval's conduct was more aggravated than Curl's case due to her statements recovered from her cellphone and Facebook account. For example, on December 21, 2020, D. Sandoval wrote in a Facebook message, "we're going back to Washington January 6 Trump has called all patriots if the electors don't elect we will be forced into civil war . . . ." *Id.*, ECF No. 103 at ¶ 8. Six days later she wrote in another Facebook message, "My fiancé [Curl] has [a] permit to carry as well and I believe we do need to have protection because this one could be bad depending on the electoral vote." *Id.*, ECF No. 122 at 4. These differences were factored in by the government in offering Curl a plea to two 40 U.S.C. § 5104 charges rather than 18 U.S.C. § 1752 charge to which D. Sandoval pleaded guilty. Curl's actions do not warrant five months, like D. Sandoval, but do warrant incarceration.

In *United States v. Anthony Scirica*, 21-cr-457 (CRC), the defendant pled guilty to the misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) in connection with his entry into the Capitol.

13

ECF No. 16. Similarly to Curl, Scirica encouraged rioters to move further into the Capitol by saying, "through there." Similarly to Curl, Scirica remained inside the Capitol for 31 minutes. Similarly to Curl, Scirica showed no remorse after he was arrested. ECF No. 22. Judge Cooper sentenced Scirica to 15 days of intermittent incarceration. ECF No. 24. A 30-day term of confinement for Curl would not create an unwarranted disparity.

In *United States v. Thomas Fee*, 21-cr-133 (JDB), the defendant pled guilty to misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G) in connection with his entry into the Capitol. ECF No. 30. Fee entered the Capitol through the Senate Wing Door, traveled to the Crypt and back to the Senate Wing Door before he encouraged other rioters to enter the Capitol, Fee heard rioters making comments about "Pelosi," and was inside the Capitol for 40 minutes. ECF No. 38. This Court sentenced Fee to 24 months' probation. ECF No. 43.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.        **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3); *Anderson*, 545 F.3d at 1078-79.

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Curl must pay $500 in restitution, which reflects in part the role Curl played in the riot on January 6.[7] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

by the Architect of the Capitol, USCP, and MPD.) Curl's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 16.

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days of incarceration on Count Three and 24 months' probation on Count Four. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Curl's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/Brian Brady*
Brian D. Brady
D.C. Bar Number 1674360
Trial Attorney
U.S. Department of Justice, Crim. Div.
Detailed to the D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C. 20530
BBrady@usa.doj.gov
(202) 834-1916